## No. 15,647.

### Blain v. Yockey et al.
(184 P. [2d] 1015)

Decided July 14, 1947. Rehearing denied September 29, 1947.

30

Messrs. RINN & CONNELL, for plaintiff in error.

Messrs. WOLVINGTON & WORMWOOD, for defendant in error Yockey.

Messrs. GOSS & HUTCHINSON, for defendant in error Martin.

MR. JUSTICE ALTER delivered the opinion of the court.

HAZEL BLAIN, plaintiff in error here, plaintiff below, brought an action against Ralph E. Yockey and Sam Walter Martin, defendants below, to recover damages for personal injuries sustained by her in an automobile collision. On verdicts returned by the jury, judgment was entered by the trial court: Dismissing plaintiff's complaint; dismissing defendant Martin's cross complaint; and dismissing defendant Yockey's counterclaim against plaintiff and Martin. Blain brings the cause here for review by writ of error. We will herein designate the parties as they appeared below, or by name.

Plaintiff alleged in her complaint that on the morning of December 15, 1943, a dense fog settled on the highway east of Boulder, Colorado, and at about 6:40 o'clock A.M., a collision occurred on said highway between Martin's automobile and Yockey's truck, both of which were being driven in an easterly direction from Boulder; that as a result of the collision, Martin's automobile and Yockey's truck obstructed the right-hand traveled portion of the highway; that plaintiff, while driving her automobile in a careful manner, and at a lawful rate of speed on the right-hand side of said highway, encountered an unusually dense wave of fog which practically obstructed her view of the highway and objects thereon, as a result of which her car collided with Yockey's truck, and she sustained serious personal injuries. Plaintiff further alleged that in view of the dense fog Martin was negligent in decreasing the speed of his car or stopping it on the highway without proper signals or sounding his horn and that the Yockey truck was negligently operated in following the Martin automobile closer than was reasonable and prudent under existing circumstances. It further was alleged that both Martin and Yockey were negligent in that they did not remove their respective automobiles from the highway so as to permit the free and unobstructed use thereof by others, and that as a result of such joint negligence plaintiff was seriously injured.

Defendant Yockey, by his pleadings, admitted the weather conditions as alleged by plaintiff; that the collision between the automobiles occurred on the highway at the time alleged by her, and he further alleged that, under the circumstances, Martin was negligent in stopping his car upon the highway without giving any sign or signal of his intention so to do; further, that plaintiff's injuries were proximately caused by her own negligence or by the combined negligence of plaintiff and defendant Martin, and he specifically denied negligence upon his part. Yockey further alleged that the interval of time between the collision between his truck and Martin's car was too brief to permit him to put out any warning signs or signals. As a separate defense, he alleged that plaintiff's injuries were the proximate result of an unavoidable accident and also that they were proximately caused by her contributory negligence; he also filed a counterclaim against plaintiff and defendant Martin asking judgment for $150 for damages to his truck occasioned by the negligence, sole or joint, of plaintiff and Martin.

Defendant Martin answered, admitting the accident at the time, place and under the weather conditions alleged by plaintiff, and denied any negligence on his part. He further alleged that Yockey's truck was negligently left upon the highway and obstructed the use thereof, and that he failed to place any warning signs or signals to caution those lawfully using the highway of the conditions, in violation of the provisions of applicable statutes. He denied that plaintiff was using due care in the operation of her automobile; alleged that she was guilty of contributory negligence which was the sole proximate cause of her injuries and damage; that plaintiff's injuries were the result of an unavoidable accident; and that the negligence of Yockey was the sole proximate cause of such injuries. Martin filed a cross complaint against Yockey, alleging that the latter so negligently drove and operated his truck as to occasion a collision

with his automobile, resulting in property damage and bodily injuries in the amount of $1,500, for which he asked judgment.

Under the summarized specification of points, plaintiff contends that the trial court erred in the following particulars: (1) In its instructions; (2) in determining the evidence sufficient to support the verdicts; (3) misconduct of the trial judge in connection with the verdicts; (4) misconduct of defendant Yockey's attorney; and, (5) in denying plaintiff's motion for summary judgment notwithstanding the verdict. These specifications we shall consider in the order presented. Neither defendant filed cross specifications of points.

1. At the conclusion of the evidence, plaintiff's attorney tendered an instruction on contributory negligence which the trial court declined to give to the jury and proper exceptions were noted. The tendered instruction reads: "It is not enough to prevent plaintiff's recovery to show merely her negligence, if she was in fact negligent. It must have been the sole or contributing cause of the injury, without which it would not have happened." With reference to this tendered instruction, plaintiff's counsel state: "This brief and proper instruction as to the law is taken directly from the case of *Arps v. Denver*, 82 Colo. 189, at page 197, also reported in 257 P. 1094, citing the leading Colorado decisions and text authorities supporting this rule and proper instruction of law on the subject of contributory negligence." Counsel is mistaken in his statement that his tendered instruction was taken directly from *Arps v. Denver, supra,* because in that opinion the following appears: "At the close of plaintiff's testimony, the court granted a nonsuit on the grounds of contributory negligence." Consequently, there were no instructions for our consideration in that case.

On the question of contributory negligence, the court in the case at bar instructed the jury as follows: " 'Contributory negligence' is such negligence on the part of

a party complaining as helped to produce the damage complained of, and without which it would not have occurred. Such negligence need not have been the sole cause of the damage, but merely such that but for the negligence of the party complaining the damage would not have occurred. If you find that such a party was guilty of contributory negligence as herein defined, you are instructed that he or she cannot recover damages against either of the others."

When the court tendered its instructions to counsel for their objections or approval, the one on contributory negligence, No. 4, prepared by the court, was among them, and with reference to this and the other instructions, counsel for plaintiff stated: "Let the record show that the plaintiff has no objections to the court's instructions."

The instructions given the jury are not contained in the record, which omission we strongly disapprove. No one of the instructions given to a jury contains all of the applicable law. All thereof must be taken and considered together as they are connected and related as a whole.

Any objection which counsel may have had by reason of the court's refusal to give his tendered instruction was waived when he expressly approved the instructions prepared by the court, and consented that they be given to the jury. It is unnecessary, under the circumstances here presented, for us to determine whether counsel's tendered instruction was a proper one or whether the instruction given by the court was a correct definition of contributory negligence and the effect of such negligence.

2. The record discloses that the evidence is in hopeless conflict. The only facts upon which all of the witnesses seem to agree is that on the morning in question the fog in the vicinity of the highway running easterly from Boulder was so dense at times as almost to obscure one's vision of the highway and any objects

thereon; and all of the witnesses agree that an accident occurred involving three motor vehicles. That plaintiff sustained serious injuries in the accident, and that her automobile was almost completely demolished is not disputed, nor is it questioned that defendant Martin's automobile was damaged, and that he sustained bodily injuries. There is no evidence questioning the fact that Yockey's truck was damaged. With the exception of these facts, no others material to plaintiff's cause of action or to the counterclaim and cross complaint are undisputed. Whether Martin's automobile was stopped, or traveling at a slow rate of speed, at the time it was struck by Yockey's truck, and whether it was on the highway; whether Yockey's truck was being driven too closely to Martin's automobile and at a reckless rate of speed when the collision between Yockey's truck and Martin's automobile occurred; whether there was sufficient time after the collision between the Martin and Yockey cars to permit flares to be placed, warning the driving public of the blocked highway; whether there was sufficient time between such collision and that in which plaintiff's car was involved within which to remove the Martin and Yockey motor vehicles from the highway; whether plaintiff was driving in a careless and negligent manner and at a reckless rate of speed, all are questions upon which the witnesses are in hopeless disagreement. Under these circumstances the determination of negligence and contributory negligence, the parties guilty thereof, and the relation of such negligence to the accident and attendant injuries, were questions of fact for the jury's determination under proper instructions. As we have hereinbefore stated, there were no objections to the instructions given the jury. Under the settled law in this jurisdiction, when there is competent evidence before the jury, even though it be in hopeless conflict, it becomes the duty of the jury, and not of the courts, to determine questions of fact, and when the jury has discharged this duty, its verdict will

not be disturbed on review. If believed by the jury, there was sufficient evidence before it to support its verdict that all three parties involved in this unfortunate accident were negligent, and this was their final determination. Our decisions are replete with authorities to the effect that disputed questions of fact are for the jury's determination under proper instructions of the court, and since there were no objections to the instructions given in the present case, we will not, under the circumstances, disturb the jury's determination. Citation of authorities in support of this rule is wholly unnecessary.

3. It is plaintiff's contention that the trial court exerted an improper influence upon the jury in connection with their verdicts and while deliberating thereon. After the jury had retired to the jury room, it addressed the following note to the trial judge, who responded thereto as indicated: "According to Instruction No. 4 [which was the court's instruction on contributory negligence] we find all three parties negligent but in different degrees. And we would like to know if we could bring in a verdict giving Mrs. Bain some compensation, but in case we do this, would she be in a position to sue for more damages later? T. B. Armstrong, Foreman." The reply to which was: "Instruction No. 4 referred to seems to be specific and clear. Accordingly, I am not permitted to give further instruction. In any event, plaintiff is not in a position to sue for more damages later. Claude C. Coffin, Judge. Return this sheet with the other instructions when you bring in your verdict."

At the time the above-mentioned note was passed to the trial judge, counsel for all parties to this litigation were present, and the court proposed to make the following answer to the inquiry: "Answering the above inquiry of the jury, under our law the degree of contributory negligence is immaterial if such contributory negligence proximately contributed in any degree, however slight, to cause the damage complained of, if the

damage would not have occurred except for such contributory negligence. Plaintiff is not in a position to sue for any damages later."

Counsel for plaintiff objected to this proposed answer, but stated that he had no objection to the court advising the jury that plaintiff would not be in position to sue for more damages in a later tort action. Attorneys for Martin and Yockey insisted that all of the trial court's proposed answer to the inquiry should be given to the jury or none thereof. The trial court apparently sustained plaintiff's objection to his proposed answer and then gave a reply in accordance with the suggestion of plaintiff's counsel, and with the latter's approval. Later, after having received the court's answer to its inquiry, the jury returned into court with their verdicts, whereupon it was discovered that only one verdict had been signed and that one related solely to the plaintiff's cause of action. The court then stated to the jury, while counsel for all parties were present, and to which no objection was made: "It is necessary for the jury to also return verdicts on the other two matters, on defendant's [Martin's] cross-complaint against defendant Yockey, and also on defendant Yockey's counterclaim against the other two. So you will, gentlemen, if you will, please, return to your jury room—well, it may be. It is better, gentlemen, to have independent verdicts on those other two, following the same instructions. There are three cases, gentlemen, there is one on plaintiff's complaint, one on defendant Yockey's counterclaim, and also one on Martin's cross-complaint, and verdicts will have to be returned on these two. So you will return to your jury room, gentlemen and find verdicts on those two claims." .

Subsequently the jury returned, and the foreman announced that they had reached a verdict. The court, after examining the verdict and in the presence of counsel for the parties, stated: "Now, gentlemen of the jury, there is clearly some confusion on the mechanics of

these forms of verdicts. The forms were prepared for your convenience. All of the verdicts that are handed to me now, signed by your foreman, Mr. Armstrong, reflect undoubtedly what your findings are intended. For that purpose, perhaps I better inquire, and I will inquire of your foreman, Mr. Armstrong first, and all of you other jurymen listen carefully to see that your foreman does answer my questions properly. Now, Mr. Armstrong, as I understand from the forms of verdict that I have before me, that your jury has found in this case that all three parties, the plaintiff and both defendants, were guilty of contributory negligence, contributing to their own injuries and damages; is that correct?" To which question the foreman and all of the jurors answered affirmatively. The court then further interrogated the jury as follows: "You have all indicated, then, that it is your intention to return verdicts against each of the parties claiming damages. In other words, verdicts so that no one of the parties, either the plaintiff or either of the defendants, can recover anything. That is your purpose, is it?" To which the foreman and each juror answered in the affirmative. Whereupon the court stated: "Gentlemen, objection having been made, it is necessary, then, for me to direct now that you return again to your jury room and correct your verdicts. Your verdicts now will be corrected, Mr. Foreman, by obliterating the three that you have returned. That can be merely by drawing a line through your signature and signing all of the others that are not now signed. So if you will, gentlemen, go through the mechanics of going back into your jury room and the foreman will sign the other verdicts. Then return them again into court."

To the instructions to the jury last hereinabove noted, plaintiff's attorney objected and suggested that since the jury had returned its verdict in which it found "for plaintiff on her complaint against defendants Ralph E. Yockey, Sam Walter Martin, and assess the amount of her recovery at none.", that this clearly indicated that

nothing was left for the jury to determine except the amount of plaintiff's damages, and he requested the court to instruct the jury to return to its jury room and determine the amount of such damages. This, the court declined to do, and the jury was again ordered by the court to retire to their room and correct their verdicts. Plaintiff then objected to the court's order that the jury correct the verdicts and moved for a mistrial, which motion was denied. The jury then returned its verdicts in proper form, finding against plaintiff and in favor of defendants Yockey and Martin on her complaint; against Yockey and in favor of Martin and plaintiff on Yockey's counterclaim, and against Martin and in favor of Yockey on Martin's cross complaint. Whereupon the court entered its judgment as hereinbefore stated.

Regardless of the cause, it is apparent that confusion concerning the instructions and verdicts arose in the minds of the members of the jury. It is definitely certain that at all times the jurors were unanimous in their opinion that all parties involved were guilty of negligence or contributory negligence and therefore none was entitled to a favorable verdict. The jury was sworn to try and determine the issues and render a true verdict, and until it had discharged its full duty, or the court had determined that it would be impossible for it to reach a verdict, it was the court's duty to give them all reasonable assistance to discover and declare the truth according to the evidence.

 "The principle is general that when a jury return an informal, insensible, or a repugnant verdict, or one that is not responsive to the issues submitted or is in disregard of the instructions of the court, they may be directed by the court to reconsider it and bring in a proper verdict, * * * This may be done with or without the consent of counsel and should be done whether requested or not. This principle has been applied to corrections by the jury as to damages, parties, insertion of the degree of the offense of which the defendant has

been convicted, as well as to \* \* \* special findings. The practice is really only an application of the settled rule that until the verdict has been recorded, or the jury have been discharged as unable to agree, their connection with the case has not come to an end. \* \* \*

■ ■ "When the jurors are sent back to reconsider their verdict, they may amend it not only by correcting a mistake in form or by making plain that which was obscure, but they may alter it in substance if they so agree. The case is still in their hands on their second retirement, and not being bound by their former action, they are at liberty to review the case and bring in an entirely new verdict. But while it is entirely clear that the trial judge may send the jury back to the consultation room for the purpose of correcting their finding as to matters of informality and uncertainty, and where the issue has not been passed upon by them, yet the judge must not even suggest the alteration of a verdict in substance. The action of the judge in the correction of verdicts should be taken with great caution. He must not throw the weight of his influence into the deliberations of the jury as to matters exclusively within their province." 53 Am. Jur., p. 762, §1099.

For cases illustrative of the general principle announced in the above text see: *Patrick Co. v. Skoman,* 1 Colo. App. 323, 29 Pac. 21; *Schoolfield v. Brunton,* 20 Colo. 139, 36 Pac. 1103; *Lacey v. Bentley,* 39 Colo. 449, 89 Pac. 789; *Calnon v. Sorel,* 108 Colo. 467, 119 P. (2d) 615. The actions and conduct of the trial court in enlightening the jury as to the correct method of expressing its unanimous opinion by the foreman's sinature to the proper forms of verdict was entirely proper and consistent with his duties, and we perceive no prejudice whatever to plaintiff in the procedure adopted.

■ 4. Supporting plaintiff's motion for a new trial, affidavits alleging misconduct of Yockey's attorney in his argument to the jury were filed. According to these affidavits, the attorney stated to the jury: "You should

not allow any damages to the plaintiff for loss of earnings or hospital bills because her husband has a cause of action for those and will no doubt sue for them later on." We have called attention formerly to the fact that the instructions given the jury are not to be found in the record. We are not advised as to the items contained in the instruction on measure of damages given by the trial court to the jury, without which it is impossible for us to determine whether the statement accredited to Yockey's attorney was justified. In any event the record does not contain any objection promptly made to the statement of counsel, and the trial court was afforded no opportunity of admonishing counsel, or instructing the jury to disregard the statement, if the same was improper. The record considered, plaintiff is not in position to insist upon a determination of this specification.

█ 5. Contemporaneously with the filing of the motion for a new trial, plaintiff filed a motion for summary judgment and for judgment notwithstanding the verdict of the jury. Upon hearing, the court denied both of these motions. We shall treat the motion for summary judgment and for judgment notwithstanding the verdict of the jury, as if they were separate.

Motions for summary judgments are authorized by rule 56 R.C.P. Colo., and the provisions for, and circumstances under which, such motions are proper, are therein set forth. Paragraph C (c) of said rule provides: "The motion shall not be heard until at least 10 days after the service thereof. The adverse party prior to the day of hearing may serve opposing affidavits. The judgment sought shall be rendered forthwith if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that, except as to the amount of damages, there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Conversely, if an examination of the pleadings herein shows that there is a genuine issue as to material facts, and consequently the court was not

authorized to enter a judgment as a matter of law, the motion for summary judgment was properly denied. The obvious purpose to be served by the above rule is to further the prompt administration of justice and expedite litigation by avoiding needless trials and enable one speedily to obtain a judgment by preventing the interposition of unmeritorious defenses for purpose of delay. The provisions of the rule afford a method whereby it is possible to determine whether a genuine cause of action or defense thereto exists and whether there is a genuine issue of fact warranting the submission of the case to a jury. Here, the attorneys for the litigants were engaged in the trial of this case for several days, and the record clearly indicates that the trial proceeded upon the assumption that there was a genuine issue as to material facts. Plaintiff made no motion for a directed verdict. Under these circumstances she is not now in position to urge upon this court that there was no genuine issue of fact triable by the jury.

In *Hatfield v. Barnes*, 115 Colo. 30, 168 P. (2d) 552, we had occasion to consider rule 56, supra, and in connection therewith we said: "Summary ·judgment is a drastic remedy and is never warranted except on clear showing that there is no genuine issue as to any material fact. * * * It does not compel a party to try his case on affidavits with no opportunity to cross-examine affiants. * * * To authorize the granting of summary judgment, the complete absence of any genuine issue of fact must be apparent, and all doubt thereon must be resolved against the moving party." The record in the instant case conclusively establishes that here there were genuine issues of fact, and, consequently, the motion for summary judgment was properly denied.

It has been held that a motion for judgment non obstante veredicto is but a belated motion for judgment on the pleadings, and we have so determined in this jurisdiction. We also have held that: "A judgment non obstante must rest on the pleadings (33 C.J. 1177-

80), and the evidence is irrelevant to it." *Board of Commissioners v. Wood,* 80 Colo. 279, 250 Pac. 860. See, also: *De Boer v. Olmsted,* 82 Colo. 369, 260 Pac. 108; *Cameron Brothers v. Osborne, Admx.,* 69 Colo. 199, 193 Pac. 554.

Our attention has not been called to any rule contained in our Rules of Civil Procedure specifically governing motions for judgment non obstante veredicto, and the general rule is: "In the absence of a statute providing otherwise, such a judgment [non obstante veredicto] may be rendered only when the pleadings entitle the party against whom the verdict is rendered to a judgment, and only where the party against whom such judgment is rendered is precluded from recovery by some matter not subject to amendment, or which could not be supplied on a new trial, and where the defect in the pleading was not cured by the verdict." 49 C.J.S., p. 149, §60 (a).

It may be stated as a general rule that in the absence of a statute providing otherwise, a judgment non obstante veredicto must be granted, if at all, on the record itself, and, consequently, a motion for judgment non obstante veredicto can only be sustained where a motion for judgment on the pleadings could properly be granted. In the instant case no motion for a judgment on the pleadings, if made, should have been granted, consequently the motion for judgment non obstante veredicto was properly denied.

The able and exhaustive briefs filed by plaintiff's counsel fail to convince us that plaintiff was not accorded a fair and impartial trial, or that there is reversible error disclosed by the record.

The judgment, accordingly, is affirmed.

MR. CHIEF JUSTICE BURKE and MR. JUSTICE HILLIARD concur.

*On Petition for Rehearing.*

By MR. JUSTICE ALTER:

Counsel for plaintiff in error in their petition for re-. hearing urge us to overrule our decision in *Healy v. Hewitt,* 101 Colo. 92, 71 P. (2d) 63, and adopt the dissenting opinion therein as the law in this jurisdiction. It also is urged that our opinion in *Jaeckel v. Funk,* 111 Colo. 179, 138 P. (2d) 939, is contrary to our present decision. In the instant case there is no allegation that the negligence of which complaint is made consisted of a wilful and wanton disregard of the rights of plaintiff, while in *Healy v. Hewitt, supra,* it was so alleged, and the jury found wilful and wanton negligence. In *Jaeckel v. Funk, supra,* the court expressly instructed the jury that unless it found from the evidence that the negligence consisted of a wilful and wanton disregard of the rights of plaintiff, no verdict in the latter's favor could be returned. Assuming, but not deciding, that the dissenting opinion in *Healy v. Hewitt, supra,* is a correct statement of law and should now be so announced in this jurisdiction, we would not be warranted in so holding under the factual situation presented.

The petition for rehearing is denied.